Mr. Justice Clin
delivered a dissenting opinion:
This cause comes here on an appeal from an order passed on May 19, 1876, by the justice holding a special term, probate jurisdiction, granting letters of administration to one Davis Affiick on the personal estate of Kebecea B. Afflict, an infant.
The undisputed facts in the case, as disclosed by the record, are these:
This child died in the District of Columbia, on the 9th day of February, 1876, about three years of age, while in the custody and care of its uncle and guardian, William P. White, a citizen of the United States, then and now a resident of this city, and with whom it had lived since it was two and a half months old. White was appointed the guardian of the child by this court on the 19th day of August, 1878, and had in fiis *99 possession some $9,000 in money and other personal effects belonging to the child when it died.
On the 15th of February, 1876, "White filed a petition, under oath, in this court, stating, in substance, that the child died in this city; that it had been a resident thereof since it was two and a half months old; that at the time of its death it was domiciled here; that it left personal property within the jurisdiction of this court; that he was entitled to administer on its estate, and asked that letters of administration be granted to him.
Upon the filing of this petition the court ordered a notice to be published in one of the daily papers of this city that all parties interested appear on the 11th of March following to show cause against the grant of letters to White as prayed. This order was duly published. Nothing appears to have been done in the cause uutil the 24th of March, when Davis Afflick appeared and filed a counter-petition, alleging the death of the child as before stated; that its true domicil was in Memphis, Tennessee; that by the laws of Teunessee he was the next of kin and entitled to letters of administration, and asked that letters on the child’s estate issue to him. There is nothing in the record tending to show that any notice whatever was given to White, or to any one concerned, of the filing of Afflick’s petition, or that any citation or process was-issued against him or the other relatives of the child.
On March 27, three days after the filing of Afflick’s petition,the justice passed an order appointing Afflick the administrator of the estate. On the 15th of April following White filed* a petition, under oath, for a rehearing of his application for.letters of administration on the child’s estate, aud of the cause whereby letters were granted to Afflick, stating, in-substance, the following reasons, viz.:
First. Because the order appointing Afflick administrator was improvidently granted.
Second. Because said appointment was contrary to law and the practice regulating the appointment of administra *100 tors as prescribed by the order of court passed at a special term, probate jurisdiction, on the 20th January, 1874.
Third. The order of appointment was under a misapprehension of the law governing the appointment of administrators in the District of Columbia.
Fourth. Because he had no notice of the filing of Afflick’s petition; that he was ignorant of its existence or contents until April 12, nearly a month after the grant of letters to Afflick; that the application of Afflick should not have been heard or considered until after due notice.
Fifth. Because the case was not in a condition to be heard when the order appointing Afflick was passed. No answers had been filed to either of the petitions; no issue presented which the court could intelligently determine, aud no testimony taken, or even offered, to sustain or disprove the allegations contained in the respective petitions, which allegations were at variance with each other. In this petition for a rehearing "White further stated that, if permitted to do so, he could and would show good and sufficient cause against the grant of letters to Afflick; that the material allegations in Afilick’s petition were untrue, and that the latter was not a fit or proper person to be appointed administrator on this estate.
Due notice of the filing of this petition for a rehearing and a copy thereof were served on Afflick’s attorney, anti on the day fixed for calling it up both parties appeared in court by their attorneys, and, after argument, the following order was passed:
“In the Supreme Court of the District of Columbia, special term, probate jurisdiction.

''In Ike matter of the estate of Rebecca B. Afflich, deceased.

“The petition of "William P. "White for a rehearing in this cause, as filed herein on the 15th instant, coming on to be heard, both parties, to wit, the said William P. White and Davis Afflick, being represented in court by their respective solicitors, and the court having granted a rehearing as prayed, *101 and the cause being again heard and submitted, and it appearing to the court that the decree passed in this cause, on the 27th day of March last past, appointing the said Davis Afflick administrator on the personal estate of the said Rebecca B. Afflick, deceased, was'improvidently granted and passed, the cause uot being in proper condition for hearing: It is, this 18th day of April, A. D. 1876, ordered, adjudged, and decreed that the said decree of March 27 last appointing said Davis Afflick administrator as aforesaid be, and the same is hereby, set aside, and said appointment be, and the same is hereby, revoked and held for naught.
“And it is further ordered that the said William P. White and the said Davis Afflick each have fifteen days from the date of this decree within which to amend their respective petitions as they may be advised; and upon the coming in of such amendments, or at the end of such term, if no amendments be filed, to cause to proceed according to the forms and practice prescribed by this court and the law governing the same.
“ By the court: A. W.”
On the 2d day of March following, and within the period allowed the parties to amend their respective petitions, White filed an amended petition, under oath, alleging that he was a citizen of the United States, and a resident of and domiciled in the city of Washington, in this District, and had so resided and been domiciled for more than five years. On the 6th of the same month Afflick filed an answer to White’s amended petition, admitting the facts alleged therein to be true.
Five days after, White moved the court for leave to file an answer to Afflick’s petition for letters on the estate, and for an order on the latter to answer his (White’s) petition for such letters, and gave notice that on the following Thursday, the 11th of May, he would call it up for hearing. Nothing was done in the cause until the 18th of May, when Affliek filed a copy of letters on the child’s property in Tennessee, granted to him by the Probate Court of Shelby county, in that State. On the day following the court below passed an *102 order overruling White’s motion for leave to answer, &c., filed on the 18th of May, refused White’s application for letters, and ordered that the same issue to Afflick. From this order White appealed to this court.
The first objection raised by the counsel for White is, that the petition of Afflick does not present a case giving the Probate Court jurisdiction to grant letters to him, because it does not allege that he is a citizen of the United States.
No such allegation appears, and Afflick’s counsel admitted at the hearing that there is no such allegation in his client’s application, contending that it was immaterial. In this, however, I differ. I consider the omission of this allegation fatal to Afflick’s claim to letters.
J3y the first section of the fifth sub-chapter of the testamentary act of 1798, it is expressly declared that no letters of administration shall be granted to a person who is not a citizen of the United States. This is a condition precedent. To entitle a-person to letters he must affirmatively briug himself within the requirements of the law. The allegation of citizenship is as essential to jurisdiction to grant letters to the applicant, as that there is property of the defendant within the jurisdiction of the court. The court cannot presume citizenship, or any other jurisdictional fact.
“ Courts of probate have a special and limited jurisdiction. Their proceedings cannot be sustained by presumption, and their records must show explicit finding of all necessary jurisdictional facts.” (Potioni’s Appeal, 31 Conn., 382; Pette v. Wilmouth, 5 Allen, 144; Brodess v. Thompson, 2 Har. & Gill, 120; Yeaton v. Lynn, 5 Peters, 228 ; Maryland act of 1778, ch. 101, sub-ch. 15, sec. 20.)
The mere filing of a copy of letters of administration granted to Afflick by the Probate Court of Shelby county, Tennessee, was not sufficient to give this court jurisdiction to grant letters on the property of the deceased within the District of Columbia. Our testamentary system expressly declares to whom letters shall be granted. A foreign administrator, as such, acquires no statutory right or prefer *103 enee to letters here. It is the established rule and the policy of the law to grant letters wherever the personal estate may be, so that the court, by taking jurisdiction of the fund, may protect the rights of creditors and others within its jurisdiction. This was the decision of this court in the Ames case, decided January Term, 1872.
The second objection is, that the order of April 18, 1876, revoking the order whereby letters were first granted Afflick, was final; aud if aggrieved, his remedy was by appeal, or by petition in the nature of a bill of review. On this point I express no opinion ; my conclusions on the other objections to the order appealed from obviate any necessity of determining this. The third objection raised on behalf of White is, that the cause was not in a condition to be heard when the order appealed from was passed.
It was further contended at the argument, in behalf of White, that the order overruling his motion for leave to file an answer to Afflick’s petition, and that the latter be required to answer his (White’s) petition, in effect deprived him of a hearing, and denied to him a right which, under the law, the court could not properly refuse. I am of opinion that these objections are well founded, and should be sustained.
Here are rival claims for letters of administration on a lai’ge aud valuable estate. Affiick alleges in his petition that the child’s domicil at its death was in the State of Tennessee; White says it was in the District of Columbia. Both petitioners are under oath. No evidence whatever has been taken in the cause, and there is nothing in the record to aid the court in determining which is the true domicil of the deceased. It does appear, however, that the child was an orphan, that it died iru this city in the care and custody of White, its lawfully appointed guardian, and that it had lived here with him some two or three years prior to its death. These are strong circumstances in favor of domicil here — sufficient, at least, to require proof that it was elsewhere. The proceedings in the court below, on White’s application, appear to have been regularly conducted, aud every step taken in the *104 cause in his behalf was upon due notice to Afflick or his counsel; while in respect of Afflick’s petition and his proceedings thereunder, a far different course seems to have been pursued. White filed his petition on February 15, 1876. Upon its filing the court ordered a notice to be published in one of the daily newspapers of the city of W ashington, warning all parties interested to appear on the 11th March following, to show cause why letters should not issue to him. This order was duly published. No objections were made or filed within the time limited. On the 24th of March, thirteen days after the time had expired to file objections, Afflick filed a counter-petition; no notice whatever of this petition was served on White or any one concerned in the estate; no order of publication passed or citation issued as required by the order of the court then in force; and, in the absence of all these essential preliminaries, the court, three days after Afflick’s petition, without proof or any other circumstances before it, outside of the allegations in the respective petitions, passed an order granting letters to Afflick.
A short time after this order was passed, White filed a petition for a rehearing and review, for the reasons herein-before stated. At the hearing of this petition both parties appeared in court, and, after argument, the court passed the order of April 18,1876, revoking the letters previously granted to Afflick. In this same order each party was allowed fifteen days within which to amend their respective petitions, and upon the coming in of the amendments, or at the expiration of the time limited, if no amendments be filed, the cause to prqceed according to the forms and practice prescribed by the court and the law governing the same. This order was eminently proper under the circumstances. - It left' the cause precisely as if no letters had been granted to Afflick. In passing it the court must have been satisfied that certain necessary allegations were omitted from the original petitions and should be supplied; else, why the provision for amendments ? The court did not intimate what amendments were necessary. It does appear, however, that there is no aver *105 ment of citizenship in either petition. On May 2, 1876, and within the period limited, White amended his petition by alleging, under oath, that he was a citizen of the United States. Afflick did not, but admitted in his answer, filed May 6, to the ameuded petition of White, that the latter was a citizen.
The time limited by the order for filing amendments expired May 8, 1876. On the 8th following, after a lapse of but five days, White filed a motion for leave to file an answer to Affliek’s petition, and for an order on the latter to answer the petition filed by him (White). A copy of the motion was served on the solicitor for Afflick on the same day. ■ At the hearing, to wit, on the 19th of the same month, this motion was overruled; and by the same order, and without any other or further steps taken in the cause,.save the filing of a copy of letters issued to Afflick on the child’s property in Tennessee, without notice, and with the allegation in the record under oath that the material facts stated in Afflick’s petition were untrue, and that he was not a fit or proper person to be appointed administrator, the court again appointed Afflick administrator.
I think this order was wholly unjustified and improper, and that the denial to White of an opportunity to answer his opponent’s petition, and of an order on the latter to answer his, was cohtrar}’ to the provisions of the testamentary act of 1798, and the practice of all well-regulated tribunals in the administration of justice. White was not guilty of any laches or neglect, for he made this motion five days after the expiration of the time limited for filing amendments to the petitions. He moved promptly and without delay.
At the hearing, counsel for Afflick contended that there is no provision in the law regulating proceedings in the Probate Court in litigated or contested cases. I cannot concede this. The mode of procedure in that tribunal, when there is a contest, is analogous to that of a court of chanceiy. The sixteenth section of the fifteenth sub-chapter of the act of 1798 expressy declares that whenever either of the parties having *106 a contest in tbe Orphans’ Court shall require, the said court may (shall) direct a plenary proceeding by bill or petition, to which there shall be an answer on oath, and if the party refuse to answer on oath to any matter alleged in the bill or petition, and proper for the court to decide upon, the party may be attached, &c. And the seventeenth section of the same sub-chapter provides that on such plenary proceeding all the depositions shall be taken in writing and recorded; and in case either party shall require, the court shall direct an issue or issues to be made up and sent to a court of law for trial; thereby expressly reserving to all litigants in this court the constitutional right of trial by' jury.
The Court of Appeals of Maryland hold, in the case of Barrol et al. v. Reading, 5 H. & J., 175, that either party has a right at any stage of the proceedings, prior to a final decision, to have a plenary proceeding and an issue sent to a court of law for trial. A plenary proceeding had been instituted in this cause, for both parties had filed petitions. The court, in passing the order of April 18, directing, after the filing of amendments, that the cause proceed according to law, must have had this provision of the act of 1798, governing contested cases, before it. Counsel, in moving the court for an order on Afflick to answer White’s petition, w^as proceeding under it. Under the plain language of the law, White should have been allowed to ansvrer Afflick’s petition. Why he was refused, the record does not show.
If the position assumed by Afflick’s counsel be correct, a very deplorable state of affairs must necessarily exist in determining the rights of parties in this tribunal. If his theory be true, the court is bound to adjudicate the rights of contending parties upon the facts disclosed by their respective petitions, no matter how much at variance they may be. This was never contemplated, and is not the law. In all controverted jurisdictional questions of fact either party has a right to be heard, and he cannot be deprived of his right to an answer from his opponent, and to an issue sent to a court of law for trial by jury. Afflick’s counsel further claimed in *107 the argument that the fund was not properly within the jurisdiction of this court. This is immaterial. That the fund is here in the custody of an officer of this court is not denied. If he has no right to it, the remedy of the party claiming it is elsewhere. If no personal property or effects of this deceased are in this District, the court is without jurisdiction to grant letters, and both petitions should be dismissed. He further contended that, even admitting the child was domiciled at its death in the District, the graudfather was entitled to letters under the law as the next of kin to the deceased, and relies on the thirteenth section of the fifth sub-chapter of the act of 1798 to support this position. It is not denied that the degrees of kindred to the intestate must be computed according to the canon law under this act, which would prefer the grandfather to the uncle. But there is another provision in the law, which does not admit of the construction placed upon the act by Afflick’s counsel. The eighteenth section of the sub-chapter declares: “ None shall be preferred in the ascending line beyond a father or mother, or in the descending line below a grandchild.” Afflick is the grandfather, and is not preferred. Beyond a parent or below a grandchild, the court exercises a discretion in the appointment, with the exception that males are preferred to females, in equal degree. The reason for thus vesting a discretionary power in the court beyond a parent and below a grandchild, is made clear when we consider that in the distribution of an intestate’s estate in this District an uncle or aunt is preferred to a grandparent; and it is the policy of the law, and so provided by express enactment in our testamentary system, to grant letters to the person, or one or more of a class of persons, who would be entitled as distributees to the- property. To illustrate: A person dies domiciled here, leaving a large amount of money in bank; his nearest relatives are uncle and grandfather; the latter is the nearest of kiu, but, in the distribution, the uncle under the law gets the property. If the position of the counsel for Afflick be correct, the graudfather is entitled to administer, while the uncle, the only person interested in or *108 entitled to the money, is to quietly stand by, await the period provided by law for the settlement of the estate, run the risk of a devastavit, and be compelled, in the shape of a commission of not, less than five per cent., to pay a-stranger for simply receiving the money from the bank and paying it over. This is too absurd, was never contemplated, and is not the law. The parties being beyond the degree expressly preferred, the court would appoint the uncle, in the exercise of a sound discretion under the law.
Large interests are involved in this case. I feel that it is the duty of the court to give each party a fair opportunity to be heard. I am gratified in coming to the conclusion herein expressed by the assurance that no serious injury can result to Affliek in reversing the order appealed from. The fund is in the custody of an officer of this court under bond ; and, moreover, ample provision is made by law for the protection of the estate pending the contest over the grant of letters, by appointing a collector to take charge of and preserve the fund.
I express no opinion as to the true domicil of this child at its death; the cause in its present condition does not justify a decision on this point. The order appealed from should be reversed, and the cause remanded to the justice holding the special term, probate jurisdiction, with instructions to require answers to be filed to the respective petitions, with liberty to Affliek to amend his petition as he may be advised, within such time as the justice may require, and that the cause thereafter proceed according to law.